T. C. DUNCAN, Respondent, v. MISSOURI KANSAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 2, 1911.

1. **RAILROADS: Injuries to Horses.** Plaintiff's blind and ordinarily gentle horse became frightened at the noise of a locomotive, while being driven near the team track of defendant to get a load of freight from a car on the team track, jumped into a deep ditch on the opposite side of the roadway, and was killed. This ditch was not guarded or protected in any way. and was only sixteen feet in the clear from the team track. *Held*, that the issue of proximate cause involved the jury ques-

tion of whether the injury was solely caused by the dangerous state of the road, or in part was due to an individual defect or vicious propensity in the horse, and the demurrer to the evidence was properly overruled.

2. ———: Invitees. When one expressly, or by implication, invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.

3. ———: Jury Question. It was a proper question for a jury to determine whether or not a roadway which, in the clear, was only sixteen feet wide and which, on one side, adjoins a place of horse-terrifying noises and moving objects and on the other side a deep, unguarded ditch, was a reasonably safe road for the purposes of its intended use.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman*, Judge.

AFFIRMED.

*Lee W. Hagerman* for appellant.

*Guy F. Nelson* for respondent.

JOHNSON, J.—This suit originated in a justice court, was appealed to the circuit court and tried to a jury resulting in a verdict and judgment for plaintiff, and is before us on the appeal of defendant. The action is for damages resulting to plaintiff from the killing of his horse and the injury to his wagon and harness which he alleges were caused by the negligence of defendant.

The injury occurred May 31, 1909, on the wagon road along the team track in defendant's yards at Nevada. This road, provided and maintained by defendant for the use of teams and vehicles employed in loading and unloading freight from cars set on the team track, was paved with cinders and was only about eighteen feet wide. The team track and yards were on

the east side of the road and on the west side was a
ditch four feet deep, followed by ground on a lower
level than the road. The east bank of the ditch was
about perpendicular and there is evidence to the ef-
fect that the ditch had cut into the bottom of the bank
a little. Defendant had given teamsters permission
to use the ditch as a dumping ground for non-odorous
refuse, but nothing had been dumped into the ditch
at the place in question. Plaintiff was a teamster
and his wagon and horse were employed at the time
in hauling a load of trash to the dumping place, after
which the wagon was to be loaded with freight from a
car on the team track. The main purpose of the trip
was to haul the load of freight from the car to the con-
signee and the hauling of the load of refuse was but
incidental. Plaintiff's son was the driver of the wag-
on. The horse was blind but was accustomed to be-
ing used in and about railroad yards and was gentle,
though, at times, he would exhibit fright at things that
ordinarily would frighten a gentle but somewhat spir-
ited horse. While driving along the middle of the team
road on a line about six feet from the ditch described,
the horse scared at a sudden, but not unusual, noise
emitted by a nearby locomotive and, bounding away
from the noise, jumped into the ditch and was killed.

It is alleged in the petition "That said ditch on
the west side of said driveway was dangerous, and that
said west side of said driveway was liable to cave in
and cause injury to some person or animal going along
said driveway; that defendant knew, or by the exercise
of ordinary diligence could have known, of the dan-
gerous condition of said driveway as aforesaid; that
defendant carelessly and negligently maintained said
driveway in said dangerous condition; that defendant
carelessly and negligently failed to protect said drive-
way from caving by erecting a retaining wall, and care-
lessly and negligently failed to protect persons or ani-

mals upon said driveway from falling into said ditch by the erection of any fence, railing or guard."

The facts stated are collected from the evidence of plaintiff and, together with those to which we shall refer, are all that need be considered in the determination of the questions raised by the demurrer to the evidence which defendant contends should have. been given.

We do not agree with defendant that the failure to protect the west line of the roadway by a retaining wall was the only act of negligence alleged as the proximate cause of the injury and that the evidence fails to support that allegation. The petition alleges two acts of negligence, i. e., failure to build and maintain a retaining wall anad failure "to protect persons or animals upon said driveway from falling into said ditch by the erection of any fence, railing or guard." There is evidence tending to show that on account of erosion at its base, a portion of the bank caved in with the horse and that the driver might have been able to bring the animal under control before it would have reached the edge of a retaining wall had there been one. The evidence also tends to show that a guard-rail or fence, would have prevented the injury and our principal inquiry embraces two questions, first, Was defendant under any duty to plaintiff of which either of the acts alleged would constitute a negligent breach? And, second, If the question stated should be answered in the affirmative, May such negligence, with reason, be regarded as the proximate cause of the injury?

The team road was one of the necessary parts of the place and means provided by defendant at Nevada for the transaction of its business with the public which required that freight be handled to and from its cars. Teamsters engaged in that work were invited by defendant to use that road and defendant owed them the duty of exercising ordinary care to provide a road reasonably safe for the purposes of its intended use. The

rule thus is stated by the Supreme Court of the United States in Bennett v. Railroad, 102 U. S. 1. c. 580: "When one expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

Ordinary care required defendant to take into consideration the circumstances of the situation and to anticipate events that common knowledge and experience would tell a person of ordinary prudence were likely to occur while the road was being used in an ordinarily careful manner. Defendant was not bound to guard against the possibility of horses being frightened at the usual objects, noises and movements of engines and cars in its yards, nor to anticipate that its invitees would attempt to drive vicious or insufficiently broken horses on the road, but was bound to take cognizance of the commonly known facts that even gentle and well-broken horses, at times, will become frightened at things to which they are accustomed, and that a noisy railroad yard is full of such causes of fright. We think the jury were entitled to conclude that a roadway which, in the clear, was only sixteen feet wide and which, on one side, adjoined a place of horse-terrifying noises and moving objects and on the other side a deep, unguarded ditch, was not a reasonably safe road for the purposes of its intended use. A single jump of a frightened horse away from the thing that caused his fright, could land him in the ditch and thus deprive the driver of a reasonable opportunity to regain control.

We find evidence of negligence in the respects averred and pass to the question of whether or not such negligence is shown to have been the proximate cause of the injury. Though the horse was blind and such defect is known to increase the susceptibility of

a horse to fright and panic, we think the question of whether the fright in this case was induced by a propensity common to the average gentle horse, or by an individual defect or vicious propensity, was one of fact for the jury to determine. If the action of the horse was what might be anticipated from an ordinary work horse in the same situation, we hold that the cause of his fright, i. e., a usual but sudden noise from a nearby locomotive was the remote, not the proximate cause of the injury. The last act in the chain of causal events was the negligence of defendant in maintaining a dangerous roadway. Such was the view expressed by this court in the following excerpt from the opinion of BROADDUS, P. J., in Ballentine v. Kansas City, 126 Mo. App. l. c. 133:

"In Bassett v. St. Joseph, 53 Mo. 290, the court said in the argument upon the facts: 'It is true that if it had not been for the attempt of the mule to kick, the injury might not have occurred; and it is equally true that if there had been no excavation at hand, the kicking of the mule would have been harmless.' And so in this case, it is true that the injury would not have occurred if the horse had not moved from the place where it was hitched, but the evidence tends to show it is equally true that if the declivity had been guarded the backing of the horse 'would have been harmless.' It was for the jury to say whether the injury was the sole result of the backing of the horse, in which event defendant was not liable for damages; or whether it was the result of the city's negligence contributed to by the accidental action of the horse, in which event the city would be liable."

·As we view it the issue of proximate cause involved the jury question of whether the injury was solely caused by the dangerous state of the road, or in part was due to an individual defect or vicious propensity in the horse. The evidence of plaintiff presented

a case to go to the jury and, since we find no prejudicial error in the record and that the issues were submitted in substantial conformity to the views expressed, it follows that the judgment must be affirmed. All concur.